IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| TERRY HOOD, ) | |
| No. A73193, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 15-cv-00310-JPG |
| ) | |
| ALFONSE DAVIS, ) | |
| SHERRI LYNN, ) | |
| ERIC A. PFAU, ) | |
| DR. V. SHAH, ) | |
| CHRISTINE BROWN, ) | |
| ROBERT J. HILLIARD, and ) | |
| GREGORY S. RHINE, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM AND ORDER

**GILBERT, District Judge:**

Plaintiff Terry Hood is an inmate currently housed in Pinckneyville Correctional Center. Pursuant to 42 U.S.C. § 1983, Plaintiff brings this action for deprivations of his constitutional rights with respect to his medical care while he was housed at Shawnee Correctional Center and Pinckneyville Correctional Center.

This case is now before the Court for a preliminary review of the complaint pursuant to 28 U.S.C. § 1915A. The Court is required to dismiss any portion of the complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law is immune from such relief. 28 U.S.C. § 1915A(b).

An action or claim is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Frivolousness is an objective standard that refers to a claim that "no reasonable person could suppose to have any merit." *Lee v. Clinton,* 209 F.3d

1025, 1026-27 (7th Cir. 2000). An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The claim of entitlement to relief must cross "the line between possibility and plausibility. *Id*. at 557. At this juncture, the factual allegations of the *pro se* complaint are to be liberally construed. *See Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

## The Complaint

According to the complaint, when Plaintiff Hood arrived at Shawnee Correctional Center in 2011 his medical records clearly revealed that he had been prescribed Robaxin[1] for back pain, as well as other medications, such as Prozac[2]. Dr. Alfonse Davis refused to renew the Robaxin prescription, instead prescribed naproxen[3]. In late February or early March he was also prescribed indomethacin[4] at the direction of Dr. Davis, but Plaintiff does not know why (Doc. 1, p. 9).

In May 2013, Plaintiff sought renewal of his naproxen prescription. He was issued several "mandatory" call passes to see Dr. Davis, but they were all cancelled. Plaintiff wrote to Assistant Warden Robert J. Hilliard, who indicated that he would respond to Plaintiff after reviewing "the file" (*see* Doc. 1, p. 31). Two weeks later, Plaintiff received notice from Health Care Unit Administrator Sherri Lynn that Plaintiff was scheduled to see the doctor (*see* Doc. 1,

---

[1] Robaxin is prescribed to relieve pain, muscle spasms and inflammation. *See* www.rxlist.com/robaxin-drug.htm.

[2] Prozac is an antidepressant. *See* www.rxlist.com/prozac-drug.htm.

[3] Naproxen is a generic formula nonsteroidal anti-inflammatory drug. *See* www.rxlist.com/naprosyn-drug.htm.

[4] Indomethacin is a generic formula nonsteroidal anti-inflammatory drug. *See* www.rxlist.com/indomethacin-drug.htm.

p. 32). During this same general time period, Plaintiff wrote a grievance regarding not being able to renew the naproxen prescription. C/O Eric A. Pfau, who is not a doctor, but who was purportedly "posing as a counselor," responded by explaining that the protocol was to treat back pain intermittently with nonsteroidal anti-inflammatory drugs, such as naproxen, but that the side effects prohibited continuous use of such drugs (*see* Doc. 1, p. 21).

Plaintiff was never seen by a physician for a refill of Robaxin or naproxen, although in October 2013 he saw a doctor to secure a refill of his inhaler. In February 2014, Dr. Davis prescribed ibuprofen[5], rather than naproxen (*see* Doc. 1, pp. 8, 31). According to Plaintiff, he remained in pain during the entire period.

On April 11, 2014, Plaintiff was transferred from Shawnee to Pinckneyville Correctional Center. According to Plaintiff, he was transferred as punishment, so that Plaintiff could not appeal the denial of his grievance regarding Dr. Davis's unprofessional behavior. At Pinckneyville, Plaintiff began experiencing unspecified "side effects" of the mysterious indomethacin prescription, which Plaintiff perceives as retaliation and deliberate indifference by Dr. Davis.

At Pinckneyville, Plaintiff continued his efforts to secure a prescription for Robaxin or naproxen, but Dr. Shah denied his request—supposedly due to the "working relationship" between Dr. Davis and Dr. Shah (Doc. 1, p. 11). Shah also did not discontinue the mysterious indomethacin drug prescribed by Dr. Davis, but instead mandated physical therapy. Pinkneyville's Health Care Unit Administrator, Christine Brown knew that Dr. Shah had refused

---

[5] Ibuprofen is a generic formula nonsteroidal anti-inflammatory drug. *See* www.rxlist.com/ibuprofen-drug.htm.

to prescribe Robaxin, but apparently did nothing. Plaintiff also takes issue with Dr. Shah replacing his usual prescription for Seroquel[6] with Risperdal[7].

Plaintiff further takes issue with the fact that a health assessment was not performed within two weeks of his arrival at Pinckneyville, which Plaintiff asserts is the "generally accepted standard of care" (Doc. 1, p. 10). He also complains that, although inmates are supposed to receive free copies of 500 pages of medical records, he was charged $20 in violation of procedures outlined in the Orientation Manual.

Plaintiff characterizes the seven named defendants as all acting negligently, unprofessionally and with deliberate indifference, in violation of the Eighth Amendment. Compensatory and punitive damages are sought, as well as injunctive relief in the form of a transfer to Dixon Correctional Center for mental health treatment.

## Discussion

The Eighth Amendment to the United States Constitution protects prisoners from being subjected to cruel and unusual punishment. U.S.CONST., amend. VIII. *See also Berry v. Peterman*, 604 F.3d 435, 439 (7th Cir. 2010). Eighth Amendment protection extends to conditions of confinement that pose a substantial risk of serious harm, including health and safety. *See Estate of Miller, ex rel. Bertram v. Tobiasz*, 680 F.3d 984 (7th Cir. 2012). Prison officials can violate the Eighth Amendment's proscription against cruel and unusual punishment when their conduct demonstrates "deliberate indifference to serious medical needs of prisoners." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976).

---

[6] Seroquel, a brand name anti-depressant. *See* www.rxlist.com/seroquel-drug.htm.

[7] Risperdal is a brand name anti-psychotic medication, which can be used to treat bipolar disorder. *See* www.rxlist.com/risperdal-drug.htm.

A medical condition need not be life-threatening to be serious; rather, it can be a condition that would result in further significant injury or unnecessary and wanton infliction of pain if not treated. *Gayton v. McCoy*, 593 F.3d 610, 620 (7th Cir. 2010). And, proving deliberate indifference requires more than a showing of negligent or even grossly negligent behavior, the equivalent of criminal recklessness must ultimately be proved. *Farmer v. Brennan,* 511 U.S. 825, 835-37 (1994). Case law illustrates that when medical care is at issue, a defendant's skill level and ability to act are relevant to liability.

As a general matter, a prison official may be liable "only if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Id*. at 847. However, because personal involvement is required for liability to attach, the *respondeat superior* doctrine—supervisor liability—is not applicable to Section 1983 actions. *Sanville v. McCaughtry*, 266 F.3d 724, 740 (7th Cir. 2001) (quoting *Chavez v. Ill. State Police*, 251 F.3d 612, 651 (7th Cir. 2001)). Accordingly, a warden, for example, cannot face liability merely because he is the chief administrative officer of the prison. Wardens and top level administrators are "entitled to relegate to the prison's medical staff the provision of good medical care." *Burks v. Raemisch*, 555 F.3d 592, 595 (7th Cir. 2009).

Relative to medical professionals, erroneous treatment constituting a substantial departure from accepted medical judgment, practice, or standards may constitute deliberate indifference. *See Gayton,* 593 F.3d at 623; *Jones v. Simek*, 193 F.3d 485, 490 (7th Cir. 1999). Physicians, however, are entitled to deference in treatment decisions "unless no minimally competent professional would have so responded under similar circumstances." *Sain v. Wood,* 512 F.3d 886, 894–95 (7th Cir.2008); *see Duckworth v. Ahmad,* 532 F.3d 675, 682 (7th Cir. 2008). Mere disagreement with a physician's chosen course of an inmate's medical treatment does not

amount to deliberate indifference. *See Snipes v. DeTella,* 95 F.3d 586, 591(7th Cir. 1996); *Ciarpaglini v. Saini,* 352 F.3d 328, 331(7th Cir. 2003); *Garvin v. Armstrong,* 236 F.3d 896,898 (7th Cir.2001) (Courts will not takes sides in disagreements about medical personnel's judgments or techniques).

Documentation submitted with the complaint establishes that Plaintiff had back issues as far back as 2007 (*see* Doc. 1, pp. 29-30). X-rays in July 2014 show continued degenerative changes in Plaintiff's lumbar and cervical spine, including severe disc narrowing at C5-6 (see Doc. 1, p. 28). Thus, it is clear that a serious medical condition is at issue relative to Plaintiff's back pain. Plaintiff's mental health issues—apparently depression and psychosis—will also be accepted as serious medical conditions. With respect to the subjective aspect of Eighth Amendment liability, the allegations against each defendant will be addressed in turn. However, even accepting the allegations in the complaint as being true, the complaint fails to state a colorable Eighth Amendment claim against any of the defendants. Although Plaintiff may fail to appreciate the types of medications at issue, the Court cannot ignore that he has essentially pleaded himself out of court.

### *Dr. Davis and Dr. Shah*

Both Dr. Davis and Dr. Shah treated Plaintiff. Plaintiff complains that Dr. Davis cancelled appointments, refused to prescribe Robaxin, refused to renew Plaintiff's naproxen prescription, and instead prescribed ibuprofen and, for mysterious reasons prescribed indomethacin. Then, when Plaintiff filed a grievance against Dr. Davis, Plaintiff was transferred from Shawnee Correctional Center to Pinckneyville Correctional Center, where he was treated by Dr. Shah. Allegedly, because of a close relationship between Dr. Davis and Dr. Shah, Dr. Shah also refused to prescribe Robaxin and naproxen. Shah also failed to discontinue the

mysterious indomethacin prescription issued by Dr. Davis—instead, physical therapy was mandated. In addition, Dr. Shah replaced Plaintiff's Seroquel prescription with Risperdal.

Although Plaintiff may have preferred one prescription drug over another to treat his back pain or mental health concerns, or disagreed with each doctor's course of treatment, but that does not offend the Eighth Amendment. Moreover, relative to Plaintiff's back pain, the prescription changes appear to be merely a switch from one formula or brand of the same class of medication, which hardly suggests deliberate indifference. And, the mysterious medication indomethacin is just another nonsteroidal anti-inflammatory drug ("NSAID"). Consequently, it appears that Plaintiff was consistently prescribed one NSAID or another, even when Dr. Davis cancelled scheduled appointments with Plaintiff.

Similarly, Dr. Shah switching the anti-depressant Seroquel for the anti-psychotic Risperdal, which can be used to treat bipolar disorder (a mood disorder), is a treatment decision that, by itself, does not offend the Eighth Amendment. And, Dr Shah mandating physical therapy is hardly deliberate indifference; it is added treatment that even a layman can see was warranted based on the x-rays taken of Plaintiff's spine. The vague suggestion that Dr. Shah's treatment decisions were made because of a close relationship with Dr. Davis is nothing more than a bald assertion that does not change the analysis or conclusion.

For these reasons, the claims against Dr. Davis and Dr. Shah will be dismissed with prejudice.

### *Sherri Lynn and Christine Brown*

Sherri Lynn and Christine Brown both hold the title of Health Care Unit Administrator at their respective prisons. The doctrine of *respondeat superior*—supervisory liability—is not applicable to Section 1983 actions. *Sanville v. McCaughtry*, 266 F.3d 724, 740 (7th Cir. 2001).

"[S]upervisors must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye for fear of what they might see. They must in other words act either knowingly or with deliberate, reckless indifference." *Backes v. Village of Peoria Heights, Illinois*, 662 F.3d 866, 870 (7th Cir. 2011).

According to the compliant, Lynn and Brown were each made aware of Plaintiff's inability to secure requested prescription changes, but neither remedied the situation. Documentation indicates that Lynn responded to Plaintiff in May 2013 by stating that Plaintiff had been scheduled to have his concerns assessed by a physician. That response does not suggest deliberate indifference. Top level administrators are "entitled to relegate to the prison's medical staff the provision of good medical care." *Burks v. Raemisch*, 555 F.3d 592, 595 (7th Cir. 2009). There is no suggestion that Lynn had any authority to dictate treatment or override a physician's orders. The same analysis applies to Brown, who is only alleged to have known about Plaintiff's pursuit of particular prescriptions. The claims against Lynn and Brown, therefore, will be dismissed with prejudice.

### *Robert J. Hilliard*

It is alleged that Shawnee's Assistant Warden, Robert J. Hilliard, was aware of Plaintiff's inability to secure requested prescription changes. Hilliard indicated that he would respond to Plaintiff after he reviewed the file. Documentation reflects that Hilliard did request the file (*see* Doc. 1, p. 31). Even assuming that Hilliard did not get back to Plaintiff and that his inquiry did not lead to Plaintiff receiving medication, there is nothing to suggest deliberate indifference by this supervisor—at worst, negligence. Again, top level administrators are "entitled to relegate to the prison's medical staff the provision of good medical care." *Burks v. Raemisch*, 555 F.3d 592, 595 (7th Cir. 2009). There is no suggestion that Hilliard had any authority to dictate treatment or

override a physician's orders. The claim against Assistant Warden Hilliard will, therefore, be dismissed with prejudice.

### *Eric A. Pfau and Gregory S. Rhine*

According to the complaint, C/O Pfau, who is not a doctor, "posed" as a counselor and responded to Plaintiff's grievance about not getting a naproxen re-fill. Pfau attempted to explain that naproxen is an NSAID and, according to protocol, the medication could not be taken indefinitely (*see* Doc. 1, p. 21). Although Pfau's information appears to be generally correct, even assuming he improperly offered medical advice, what he did only amounts to negligence, not deliberate indifference. As the instructions on the grievance form indicate, after presenting the issue to a counselor, Plaintiff was free to pursue his grievance by submitting it to a grievance officer—which he apparently did (*see* Doc. 1, p. 21). The claim against Pfau will be dismissed with prejudice.

Counselor Gregory S. Rhine is named as a defendant, but there are no allegations about him in the narrative of the complaint. Merely naming a defendant in the caption is insufficient to state a claim. *See Collins v. Kibort*, 143 F.3d 331, 334 (7th Cir. 1998). However, attached to the complaint is Rhine's Counseling Summary, which states that Rhine turned in Plaintiff's grievance (*see* Doc. 1, p. 35). Thus, it is clear that Rhine did not exhibit deliberate indifference and he will be dismissed with prejudice as well.

### *Miscellaneous Allegations*

The complaint asserts that Plaintiff was transferred from Shawnee Correctional Center to Pinckneyville Correctional Center in retaliation for filing a grievance against Dr. Davis, and in an attempt to prevent Plaintiff from appealing his grievance. Because the complaint makes clear that only Eighth Amendment claims are asserted, no First Amendment retaliation claim is

considered to have been pleaded.  Furthermore, these acts and intentions are not attributed to any of the named defendants.  Thus, no claim has been stated.  Any intended claims should be considered dismissed without prejudice to those claims being brought in another action.

The allegations in the complaint that Plaintiff was charged $20 for copies of his medical records, in violation of prison policies does not state a constitutional claim.  Furthermore, these acts and intentions are not attributed to any of the named defendants.  Thus, no claim has been stated.  Any intended claims should be considered dismissed without prejudice to those claims being brought in another action.

### Disposition

The Clerk of Court is **DIRECTED** to have the record properly reflect that the "Unknown Party" defendant is **GREGORY S. RHINE**, Counselor/Correctional Officer, Shawnee Correctional Center (*see* Doc. 1, p. 1 (caption), and p. 2 ¶ 4).

**IT IS HEREBY ORDERED** that, for the reasons stated, all Eighth Amendment claims against all named defendants are **DISMISSED with prejudice**.  Judgment shall enter accordingly against Plaintiff and in favor of the defendants.  A strike will be assessed against Plaintiff for purposes of 28 U.S.C. § 1915(g).  The Clerk of Court shall have the record reflect that all pending motions (Docs. 3, 4) are **DENIED as moot**.

**IT IS SO ORDERED.**

**DATED:** April 17, 2015

*s/J. Phil Gilbert*
**United States District Judge**